IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOURNEY ELLIOTT MYERS *and* SAMIRA DANAEI, | |
| *Plaintiffs*, | Civil Action No. 2:24-cv-1592 |
| v. | Hon. William S. Stickman IV |
| MARCO A. RUBIO, *in his official capacity as U.S. Secretary of State, et al.*, | |
| *Defendants*. | |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Journey Elliott Myers ("Myers") and Samira Danaei ("Danaei") (collectively "Plaintiffs"), brought this action against Defendants Antony Blinken ("Blinken") and Robert Jachim ("Jachim") (collectively "Defendants") in their official capacity.[1] (ECF No. 1). At Count I, Plaintiffs seek a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to adjudicate Plaintiffs' visa application. (*Id.* ¶¶ 109-23). At Count II, Plaintiffs request the Court to compel Defendants to adjudicate their visa application under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1) and 706(2). (*Id.* ¶¶ 124-31). Defendants filed a motion (ECF No. 9) and supporting brief (ECF No. 10) seeking to dismiss Plaintiffs' complaint. For the reasons articulated below, the Court will grant Defendants' motion.

---

[1] Under the new presidential administration, the Secretary of State is Marco Rubio. U.S. DEPARTMENT OF STATE, https://www.state.gov/secretary/ (last visited March 13, 2025); *see also Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 457 n.2 (D.N.J. 2023) ("The Court may take judicial notice of information published to government websites on a motion to dismiss without converting it into a motion for summary judgment.").

1

I. **FACTUAL BACKGROUND**

On January 26, 2023, Myers, a United States citizen, filed a Petition for Alien Fiancé(e), also known as a Form I-129F with the United States Citizenship and Immigration Services ("USCIS") on behalf of Danaei, his fiancée. (ECF No. 1, ¶¶ 2, 66). Danaei is an Iranian national and the primary applicant for the nonimmigrant visa application. (*Id.* ¶ 67). Plaintiffs' petition was forwarded to the National Visa Center ("NVC") for processing. (*Id.* ¶ 3). On February 17, 2024, Plaintiffs submitted an Online Nonimmigrant Visa Application ("DS-160"). (*Id.* ¶ 4). On March 1, 2024, Danaei was interviewed at the United States Embassy in Ankara, Turkey. (*Id.* ¶ 5). At this point, Danaei's visa was refused pursuant to 8 U.S.C. § 1201(g) (also referred to as the United States Immigration and Nationality Act ("INA") § 221(g)). (*Id.* ¶ 49). After the interview, Danaei was informed that her visa would be placed in administrative processing. (*Id.* ¶ 6). According to Plaintiffs, the application has remained in administrative processing since that time. (*Id.*). Danaei's application status on the United States Department of States' ("DOS") website is listed as refused:

**Refused**

Immigrant Visa Case Number: ANK2023855023 01 ANK
Case Created:           21-Dec-2023
Case Last Updated:      15-Oct-2024

A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
For more information, please visit U.S. Embassy Ankara.

(ECF No. 1-3, p. 2)[2]; (ECF No. 1, ¶ 73). Plaintiffs have not received an update since the interview. (*Id.* ¶ 74). Plaintiffs are concerned that the new presidential administration will institute travel bans effecting Iranian nationals. (*Id.* ¶¶ 75-77). Further, Plaintiffs explained that "[b]eing separated has . . . been a harrowing reality for Plaintiffs" particularly in light of the volatile security situation in Iran. (*Id.* ¶ 78). Plaintiffs contend that "Defendants are withholding final action on . . . Danaei's application and have left Plaintiffs in a perpetual state of administrative uncertainty." (*Id.* ¶ 86). Blinken, who Plaintiffs sued in his official capacity, was the Secretary of the DOS. (*Id.* ¶ 30). Jachim, also sued in his official capacity, was the DOS's Acting Director of the Office of Screening, Analysis, and Coordination. (*Id.* ¶ 31).

At Count I, Plaintiffs request that the Court issue a writ of mandamus compelling Defendants to make a final decision with respect to Danaei's visa application. (*Id.* ¶¶ 109-23). At Count II, Plaintiffs request that the Court compel Defendants to complete a final adjudication of Danaei's visa application in accordance with the APA. (*Id.* ¶¶ 124-31). Under both Counts, Plaintiffs maintain that they "have fully complied with all statutory and regulatory requirements for seeking their K-1 nonimmigrant visa, including obtaining approval of an I-129F, applying for their visa with a properly filed DS-160, and submitting all necessary documentation, paying all required fees, and completing their visa interview." (*Id.* ¶ 114). Nevertheless, Plaintiffs allege that Defendants "have willfully and unreasonably failed to adjudicate" the visa application. (*Id.* ¶ 115); (*see also id.* ¶ 121 ("Defendants have failed in their duty to adjudicate . . . Danaei's visa

---

[2] Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the Court may consider exhibits attached to the complaint. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

application by refusing to act for an entirely unreasonable amount of time. Defendants have failed to carry out the adjudicative and administrative functions delegated to [them] by law.")).

## II.     STANDARD OF REVIEW

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), the Court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than that under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories (1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial or (2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A court lacks jurisdiction if a plaintiff cannot establish Article III standing. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.").

## B. Rule 12(b)(6)

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although the Court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

**A. Article III Standing**

Defendants contend that Plaintiffs' complaint should be dismissed as moot because the consular officer rendered a final adjudication when he refused Plaintiffs' visa application after Danaei's March 1, 2024, interview. (ECF No. 10, p. 6). As such, according to Defendants, Plaintiffs seek to compel an adjudication that has already occurred. (*Id.*). Since Plaintiffs' visa application has been adjudicated, Defendants argue that the Court has no jurisdiction over Plaintiffs' claims because there is no outstanding duty that a writ of mandamus or injunction could compel Defendants to perform. (*Id.* at 7). Plaintiffs counter that the controversy between Plaintiffs and Defendants is live as "Danaei's visa eligibility has not yet been determined because it has been deferred for further administrative processing." (ECF No. 12, pp. 6-7). Thus, the issue is whether a visa application refusal pending administrative processing pursuant to INA § 221(g) is a final adjudication.

Before deciding this issue, the Court must consider whether this issue is one of mootness (as Defendants contend) or standing. Although often confused, "standing and mootness are distinct justiciability doctrines" with different jurisdictional burdens. *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020); *see also Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022) ("The difference is not merely one of semantics."). Standing is assessed at the start of the litigation while mootness examines whether there is a live case throughout all stages of the judicial proceeding. *Zuch v. Comm'r of Internal Revenue*, 97 F.4th 81, 93 (3d Cir. 2024); *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). The distinction is important because the burden to show standing rests with Plaintiffs, while the burden to show a case is moot is borne by Defendants. *W. Virginia*, 597 U.S. at 718–19.

The standing inquiry considers "injury in fact, causation, and redressability." *Hartnett*, 963 F.3d at 305. In other words, Plaintiffs must prove that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (internal citations omitted). Importantly, the injury "must actually exist," *id.*, and the relief requested cannot be to have a defendant do what "it has already done." *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014) (dismissing a claim under Rule 12(b)(1) when the plaintiffs were requesting an agency to take action it has already taken). In contrast, cases are moot when the defendant can show developments during litigation that "eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017).

The Court holds that standing is the more appropriate lens through which to view Defendants' challenge. The parties are not debating whether an *intervening* circumstance deprives the Court of jurisdiction. Defendants are alleging that there is no live case or controversy because Danaei's visa application was refused on March 1, 2024, before this litigation was commenced. *See Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 902-03 (N.D. Ill. May 3, 2024) (reframing a mootness argument as a standing issue when the basis of the argument was an event occurring prior to the litigation commencing). While the parties frame their arguments in terms of mootness, they are really disputing whether Plaintiffs had standing to bring the litigation from the outset. The Court is permitted to reframe Defendants' argument as a standing issue because Article III standing is a "threshold" issue, *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 573-74 (3d Cir. 2020), which the Court has an obligation to raise *sua sponte*, *Seneca Res.*

*Corp. v. Twp. of Highland, Elk Cnty., Pennsylvania*, 863 F.3d 245, 253 (3d Cir. 2017). Thus, the proper inquiry is whether Plaintiffs have proven they have standing to bring this matter by showing a decision has yet to be made on their visa application.

Article III of the United States Constitution provides that federal courts may only exercise jurisdiction over "Cases" and "Controversies." U.S. CONST. ART. III, § 2. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). As stated above, as the "party invoking federal jurisdiction," Plaintiffs bear the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

In the instant case, the relevant prong of standing is redressability. Plaintiffs' requested relief is to compel Defendants to adjudicate Plaintiffs' visa application.[3] For Plaintiffs' purported injury to be redressable, the relief requested must be something the Court has the power to order. *See M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[T]here is no redressability if a federal court lacks the power to issue such relief."); *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) ("Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury."). Therefore, standing turns on whether Plaintiffs

---

[3] Plaintiffs bring claims under the Mandamus Act (Count I) and the APA (Count II). The Court will analyze these claims together in the standing section of this opinion because both counts request the same relief: the Court to compel Defendants to adjudicate Plaintiffs' visa application. If the Court does not have the power to order such relief, Plaintiffs lack standing to bring both claims. *See Bokhari v. Bitter*, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) (stating that the plaintiff's "Mandamus Act claim is subsumed by his APA claim" rendering his Mandamus Act claim "duplicative"); *Azam v. Bitter*, 2024 WL 912516, at *4 (D.N.J. Mar. 4, 2024) (Where . . . a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively."); *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("[T]he standards for obtaining relief [under the Mandamus Act and the APA] are essentially the same.")

have shown that Defendants have not fully discharged their duties to review and adjudicate the visa application. Otherwise, if Defendants fulfilled their duties, Plaintiffs' purported injury would not be redressable by the Court.

Defendants contend that Plaintiffs' visa application was already refused under INA § 221(g).[4] Plaintiffs characterize Defendants' actions as a deference or quasi-refusal. Plaintiffs contend that by informing Danaei that her application was being placed in administrative processing, Defendants have not fulfilled their duty to adjudicate Danaei's visa application.[5] The United States Court of Appeals for the Third Circuit has not addressed whether a refusal under INA § 221(g) for administrative processing fulfills Defendants' adjudicatory duty. However,

---

[4] INA § 221(g) provides:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g).

[5] While the DOS has discretion with respect to whether to grant or deny a visa application, it has a nondiscretionary duty to decide the application. 5 U.S.C. § 555(b) (compelling agencies "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time . . . [to] conclude a matter presented to it."). As a result, while the ultimate decision whether to grant the visa is discretionary, "numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications." *Ahmed v. Holder*, 12 F. Supp. 3d 747, 753 (E.D. Pa. 2014) (quoting *Hoo Loo v. Ridge*, 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007)); *see* 22 C.F.R. § 41.121(a) ("When a visa application has been properly completed and executed in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa."). And while the statute and regulations governing visa applications do not provide a time frame within which the agency must adjudicate applications, the DOS "does not have limitless discretion concerning the timing of processing applications." *Id.* at 754.

9

persuasive case law from other circuits and district courts provides the Court with guidance and allows it to conclude that an INA § 221(g) refusal is a final adjudication.

In *Meleo v. Blinken*, 2024 WL 4345289 (D.N.J. Sept. 30, 2024), a district court in New Jersey decided a similar case. In that action, the plaintiffs brought an action seeking to compel the defendants to issue a final adjudication on an application for a fiancée visa under the Mandamus Act and the APA. *Meleo*, 2024 WL 4345289, at *2. As in the instant case, the plaintiffs' visa application was refused pursuant to INA § 221(g) and sent to administrative processing. *Id.* The *Meleo* court found that the plaintiffs lacked standing because an application refused and placed in administrative processing is officially denied. *Id.* at *8. Thus, the court had no ability to redress the plaintiffs' alleged injury.

Likewise, in *Denisova v. Mayorkas*, 2024 WL 2043664 (W.D. Pa. May 8, 2024), a court in this district considered whether a refusal of a family-based visa petition application was final when the application was placed in administrative processing and the consulate requested further information from the applicant. *Denisova*, 2024 WL 2043664, at *1. The court held that the refusal was a final adjudication – depriving the court of jurisdiction – even though the application was placed in administrative processing. *Id.* at *4. The court noted that the request for further information "simply commenced the reconsideration process, as opposed to continuing the prior application period." *Id.*

The court in *Denisova* relied on *Elhabash v. United States Department of State*, 2010 WL 1742116, at *3 (D.N.J. Apr. 27, 2010). In *Elhabash*, the court found it dispositive that the consular officer had informed the plaintiff that his visa application had been refused. *Elhabash*, 2010 WL 1742116, at *3. The court held that, even though the application had been refused because it required further administrative processing, it was "without jurisdiction to hear the case because

10

the Embassy has denied [the plaintiff's] visa application pursuant to INA § 221(g)." *Id.* It stated that the plaintiffs' "only recourse is to await the reconsideration of his application by the Embassy after the administrative processing is complete." *Id.*; *see also Karimova v. Abate*, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (finding an application placed in administrative processing does not require a court to compel the Government "to make yet another final decision on [an] already-refused visa application").[6]

Plaintiffs concede that the Third Circuit has not yet addressed the issue of whether an INA § 221(g) refusal constitutes a final agency action. (ECF No. 12, p. 7). Plaintiffs include a string citation to various cases where courts found that INA § 221(g) refusals are interim decisions not sufficiently final to deprive courts of jurisdiction over agency action. The Court acknowledges the decisions of these courts. *See Shahijani v. Laitinen*, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023) (finding that a refusal pending administrative processing is not a final adjudication and the DOS has a nondiscretionary duty to complete the administrative processing within a reasonable time); *Ebrahimi*, 732 F. Supp. 3d at 904 (holding that a refusal under INA § 221(g) pending administrative processing is not a final adjudication). But the Court does not find the reasoning in this line of cases to be persuasive.[7]

---

[6] These cases represent a sampling of cases finding that an INA § 221(g) refusal pending administrative processing is a final adjudication. They do not constitute the full universe of cases where courts have arrived at the same conclusion.

[7] The Court hesitates to find a duty to reconsider INA § 221(g) visa refusals that has not been clearly established by a statute or regulation. Plaintiffs' claims arise within a field that is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power[.]" *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952); *see Goodluck v. Biden*, 104 F.4th 920, 925 (D.C. Cir. 2024) (stating that when it comes to judicial intervention in visa decisions, "[h]istorical and contextual considerations . . . warrant restraint").

22 C.F.R. § 41.121(a) provides that "[n]onimmigrant visa refusals must be based on legal grounds, such as . . . INA [ ] 221(g) . . . or other applicable law." 22 C.F.R. § 41.121(a). Plaintiffs' application was refused pursuant to INA § 221(g). Their application was considered by the consular officer and officially refused. (*See* ECF No. 1-3, p. 2 ("A U.S. consular officer has adjudicated and refused your visa application.")). The consular officer reviewed the visa application, conducted an interview, and ruled that no visa would be granted. This "refused" decision is one expressly authorized by INA § 221(g). While Danaei's application may be undergoing administrative processing, the Court views this process as one of "reconsideration" – not a continuation of the adjudication process. *See Elhabash*, 2010 WL 1742116, at * 3; *Denisova*, 2024 WL 2043664, at *4. Defendants fulfilled their duties by rendering a final adjudication on Danaei's visa application.

Plaintiffs bring claims pursuant to the APA seeking to "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1) ("§ 706(1)"). (ECF No. 1, ¶ 100). The Court's ability to compel agency action under § 706 is "carefully circumscribed to situations where an agency has ignored a specific legislative command." *Massie v. U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 340, 347 (3d Cir. 2010) (internal citations omitted). Likewise, "[m]andamus is an extraordinary remedy that is available only when . . . the defendant owes the plaintiff 'a clear nondiscretionary duty.'" *Brobst v. Att'y Gen. United States*, 807 F. App'x 184, 186 (3d Cir. 2020) (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Plaintiffs are effectively suing to compel a consular officer to make *another* final decision on their already refused visa application. Plaintiffs have not identified any legal basis for that duty – let alone a specific legislative command or a clear nondiscretionary duty. The Court has no power to order Defendants to readjudicate Plaintiffs' application, nor can the Court compel an adjudication that has already occurred. Thus,

Plaintiffs' purported injury is not redressable by a favorable decision of this Court. The Court holds that Plaintiffs failed to establish Article III standing.[8]

### B. Unreasonable Delay

The Court holds that Plaintiffs failed to establish standing. However, Defendants contend that even if the Court has jurisdiction over Plaintiffs' claims, Plaintiffs' APA claim (Count II) fails because the length of delay is not unreasonable. (ECF No. 10, p. 14). Plaintiffs counter that disposition of Count II is premature at this stage of litigation because unreasonable delay claims require fact-based inquiries not suitable for determination on a motion to dismiss. (ECF No. 12, pp. 13-14). In the alternative, Plaintiffs contend that Defendants' delay in resolving Danaei's visa application through administrative processing is unreasonable.[9] (*Id.*). Even if a refusal pursuant

---

[8] Defendants argue that even if the Court has jurisdiction over Plaintiffs' claims, the Court should dismiss the complaint because the consular officer's decision to refuse Danaei's visa is unreviewable. (ECF No. 10, p. 11). Plaintiffs counter that consular nonreviewability is not applicable because administrative processing renders the consular officer's decision non-final. (ECF No. 12, pp. 12-13). In essence, Plaintiffs repeat their argument that an INA § 221(g) refusal is not a final adjudication. Consular nonreviewability is not directly relevant because Plaintiffs are not seeking judicial review of a consular officer's final decision; instead, they argue that a final decision was never made. The doctrine of consular nonreviewability states that federal courts cannot review a consular officer's denial of a visa. *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024). In light of the Court's holding that the consular officer's decision was a final adjudication, even if Plaintiffs established Article III standing, the Court would dismiss Plaintiffs' complaint because the visa refusal is not subject to review under the doctrine of consular nonreviewability.

[9] There is a dispute regarding the length of the delay at issue. Plaintiffs characterize the delay as "nearly twelve months." (ECF No. 12, p. 14). This delay appears to be the time between the INA § 221(g) refusal and the filing of Plaintiffs' brief in opposition to Defendants' Motion to Dismiss. Defendants characterize the delay as nine months – the time between Danaei's visa refusal after her interview and the filing of Plaintiffs' complaint. (ECF No. 13, p. 10 n.7). Delay in visa processing is calculated from the time the Government last took action on a visa application to the filing of Plaintiffs' complaint. *See, e.g. Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022) (determining that the delay was thirty months by calculating the time difference between "[t]he last government action on this matter" and the date the complaint was filed); *Rahimian v. Blinken*, 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (evaluating unreasonable delay of a visa application based on the time between the last action on the application and when plaintiff's complaint was filed). The last action on Plaintiffs' visa application was taken on March 1, 2024. (ECF No. 1, ¶

13

to INA § 221(g) did not constitute a final adjudication, the Court would dismiss Count II because Plaintiffs failed to plausibly allege that the length of delay was unreasonable.

Section 706(1) permits the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To succeed on a § 706(1) claim, Plaintiffs' must demonstrate that the length of the delay – slightly over eight months – is unreasonable in the context of visa administrative processing. Congress need not have set a definitive deadline for an agency to act in order for a court to find a delay in agency action unreasonable. *Pub. Citizen Health Research Grp. V. Chao*, 314 F.3d 143, 152 (3d Cir. 2002) (compelling an agency to proceed with rulemaking although enabling legislation set no specific deadline to do so). While the statute and regulations governing visa applications do not provide for a specific time frame within which the DOS must adjudicate such applications, the DOS does not have limitless discretion concerning the timing of processing such applications. *Ahmed v. Holder*, 12 F. Supp. 3d 747, 754 (E.D. Pa. 2014); *Denisova*, 2024 WL 2043664, at *4. Thus, the issue is whether the alleged eight month and two-week delay is unreasonable.

"The reasonableness of a delay in the context of an immigration application is a fact-dependent inquiry." *Ahmed*, 12 F. Supp. 3d at 759. The Third Circuit articulated a factor test in *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120 (3d Cir. 1998) ("*OCAWU*") to determine the reasonableness of agency delay. Those factors are (1) the length of time that has elapsed since the agency had a duty to act; (2) the reasonableness of the delay in context of the statute authorizing the agency's action; (3) the consequences of the delay;

---

5). Plaintiffs' complaint was filed on November 20, 2024. (*Id.*). Thus, the relevant delay is approximately eight months and two weeks. However, even if Plaintiffs' calculation was correct and the delay was closer to twelve months, the Court would still hold that the delay is reasonable as a matter of law.

14

and (4) any plea of administrative error, inconvenience, practical difficulty, or need to prioritize in the fact of limited resources. *OCAWU*, 145 F.3d at 123.

First, the Court disagrees with Plaintiffs' contention that unreasonable delay claims under the APA are not suitable for disposition at the motion to dismiss stage. Courts frequently decide § 706(1) claims as a matter of law. *See Ahmad v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 3272832, at *7 (D.N.J. July 2, 2024) (dismissing the plaintiffs' complaint on a motion to dismiss because they failed to state a claim for unreasonable delay under the APA); *Denisova*, 2024 WL 2043664, at *4-6 (same); *Ebrahimi*, 732 F. Supp. 3d at 901 ("[I]t is not uncommon for courts . . . to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion.").

Second, the Court holds, applying the *OCAWU* factors, the delay alleged is not unreasonable as a matter of law. As to the first factor, only eight months and two weeks have elapsed between the refusal for administrative processing of Danaei's visa application and the filing of the complaint. While the issue of reasonableness "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful," *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003), courts considering factually similar cases have found far longer delays reasonable. *See Azam*, 2024 WL 912516, at *10 (finding a delay of 18 months reasonable in the context of visa application processing); *Dyvonyak v. Mayorkas*, 2024 WL 3520058, at *3 (N.D. Ill. July 24, 2024) (finding 29 months to be a reasonable delay in the processing of an immigration petition); *Chang v. United States Dep't of State*, 2024 WL 3161895, at *3 (W.D. Wash. June 25, 2024) (stating, in a case involving a delay of seven months, that "in the immigration context, it is commonplace for courts to hold that a delay of less than four years is not unreasonable."). Thus, the relatively short length of delay favors a finding that the delay was not unreasonable.

As to the second factor, the statute and regulations governing visa applications do not provide for a specific time frame within which the DOS must adjudicate such applications. *See Denisova*, 2024 WL 2043664, at *4. In the absence of a statutory or regulatory timeline, this factor weighs in favor of neither party.[10]

As to the third factor, the consequences of delay, Plaintiffs contend that "delay is causing extended family separation and causing significant harm to Plaintiffs." (ECF No. 12, p. 16); (ECF No. 1, ¶¶ 7, 16, 90). The Court is sympathetic to Plaintiffs' frustrations and difficulties. Nevertheless, the consequences of the delay suffered by Plaintiffs are no different than those suffered by many other visa applicants. *See Meleo*, 2024 WL 4345289, at *10 (stating, in similar circumstances, that the plaintiffs' "predicament is not unique, and the Court cannot expedite

---

[10] Plaintiffs contend that 22 C.F.R. § 41.121(c) requires visa administrative processing to be resolved in "not more than 120 days." (ECF No. 12, p. 14). The Court disagrees. The regulation's text does not suggest that a consular supervisor must review all visa refusals that eventually may be overcome by the presentation of more evidence. Rather, it states only that, when engaging in supervisory review of such cases, consular officers "may" defer review "for not more than 120 days," when otherwise they would have to complete review "as soon as it is administratively possible." 22 C.F.R. § 41.121(c). As with all other visa refusals, review of refusals that may be overcome by additional evidence is conducted "in accordance with guidance by the Secretary of State," and is required only as far as is necessary "to ensure compliance with laws and procedures." *Id.* "[N]othing in § 41.121(c) imposes a duty for [the DOS] to review any *particular* visa refusal within a certain time." *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 100 (D.D.C. 2024) (emphasis in original). Plaintiffs' reliance on Foreign Affairs Manual ("FAM") § 507.7-2(b) is likewise unpersuasive. Plaintiffs contend that § 507.7-2(b) requires fiancée visas to be processed within 30 days of receipt of the necessary information from the applicant. (ECF No. 12, p. 15). The FAM lacks the "independent force and effect of law" because it is "not subjected to notice and comment rulemaking" and it was not "promulgated pursuant to an independent congressional authority." *Western Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996). Because the timeline set forth in the FAM lacks the force of law, it creates no enforceable right. Finally, Plaintiffs contend that 8 U.S.C. § 1571 requires Defendants to process their visa application within 30 days after the filing of the petition. (ECF No. 12, p. 4). The plain text of § 1571(b) only sets an aspirational standard for when USCIS should determine immigration-benefit applications. Further, the statute is not applicable because it "applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department." *El Centro Reg'l Med. Ctr. v. Blinken*, 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 23, 2021). "Accordingly, § 1571(b) cannot here carry the weight that plaintiff would like it to shoulder." *Arab*, 2022 WL 1184551, at *8.

Plaintiffs' visa application over other similarly situated applicants"). The Court cannot conclude that the alleged consequences of the delay have so prejudiced the Plaintiffs as to make the delay unreasonable. This factor weighs in favor of finding that the delay at issue is reasonable.

Finally, the Court must consider any plea of administrative error, inconvenience, practical difficulty, or need to prioritize in the fact of limited resources. Plaintiffs do not allege any bad faith or improprieties on behalf of Defendants suggesting that they have the capacity to finish processing Plaintiffs' visa application but refuse to do so. Considering the broad statutory deference owed to the DOS in processing visa applications, the Court will not wade into Defendants' internal adjudicatory processes for determining how to process visa applications more efficiently. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004) ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with . . . congressional directives is not contemplated by the APA."). Doing so would only encourage more litigation and permit those with the resources to bring a lawsuit to cut the line ahead of applicants with visa applications that have been pending for an even longer period of time. *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) ("Relief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." (internal citations omitted)). Thus, the fourth *OCAWU* factor weighs in favor of finding that the delay is reasonable.

Considering the *OCAWU* factors, the Court holds that the alleged eight months and two-week delay is reasonable as a matter of law. Plaintiffs have failed to state a claim for unreasonable delay under the APA. As such, even if Plaintiffs established standing, the Court would dismiss Count II of the complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion and dismiss Plaintiffs' complaint with prejudice.[11] Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

\_\_4/25/25_____
Dated

---

[11] Any amendment by Plaintiffs would be futile in the eyes of the Court. *See Burlington*, 114 F.3d at 1434 (holding that a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 JAMES WM. MOORE ET AL., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2021). Plaintiffs' claim hinges on their argument that an INA § 221(g) refusal is not a final adjudication. In light of the Court's holding that such a refusal is a final adjudication, Plaintiffs cannot maintain their action as a matter of law.